UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

JAN 2 0 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-23-GWU

DEBRA K. SCOTT,                                            PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Scott

4.       Can the claimant's severe impairment(s) be expected to result
         in death or last for a continuous period of at least 12 months?
         If yes, proceed to Step 5. If no, the claimant is not disabled.
         See 20 C.F.R. 404.920(d), 416.920(d).

5.       Does the claimant have any impairment or combination of
         impairments meeting or equaling in severity an impairment
         listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
         Impairments)? If yes, the claimant is disabled. If no, proceed
         to Step 6.      See 20 C.F.R. 404.1520(d), 404.1526(a),
         416.920(d), 416.926(a).

6.       Can the claimant, despite his impairment(s), considering his
         residual functional capacity and the physical and mental
         demands of the work he has done in the past, still perform this
         kind of past relevant work?  If yes, the claimant was not
         disabled.    If no, proceed to Step 7.    See 20 C.F.R.
         404.1520(e), 416.920(e).

7.       Can the claimant, despite his impairment(s), considering his
         residual functional capacity, age, education, and past work
         experience, do other work--i.e., any other substantial gainful
         activity which exists in the national economy?  If yes, the
         claimant is not disabled.    See 20 C.F.R. 404.1505(a),
         404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.    Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Scott

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Scott

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Debra K. Scott, was found by an Administrative Law Judge (ALJ) to have "severe" impairment consisting of a dysthymic disorder, carpal tunnel syndrome, hypertension, and degenerative disc disease. (Tr. 21). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of "light" level jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 24-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 46 years, 10th grade education and lack of transferable skills could perform any jobs if she were limited to "light" level exertion, and had non-exertional restrictions including the following. (Tr. 556-7). She: (1) could sit, stand, and walk up to four hours each in an eight-hour day, with "typical morning and afternoon breaks;" (2) could occasionally bend, squat, crawl, climb, and reach above shoulder level; (3) was mildly restricted from working around unprotected heights and moving machinery; (4) "may" be somewhat limited from dealing with the general public because of her depression but would not necessarily be entirely precluded from doing so; (5) would be restricted from adjusting to stress and pressures of a

7

fast-paced and high-pressure work atmosphere; and (5) would be considered "reasonably emotionally stable." (Tr. 557-9). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 559-60).

On the other hand, if the specific restrictions given by the plaintiff's treating neurosurgeon, Dr. Amr O. El-Naggar, were accepted, the VE testified that there were no jobs that the plaintiff could perform. (Tr. 560-1). Likewise, if the restrictions given by the plaintiff's treating family physician, Dr. John Patton, were accepted, there would be no jobs. (Tr. 561-2).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The plaintiff alleged disability due to severe back pain and other musculoskeletal problems including a bad knee and ankle. (Tr. 62, 532-3, 537-8, 540). She also described nervousness and depression. (Tr. 546, 552-4).

The plaintiff's primary argument on appeal is that the ALJ erred in not accepting the opinions of her treating physicians, particularly Dr. El-Naggar. The ALJ explicitly based his functional capacity finding on the opinion of a one-time consultative examiner, Dr. Jeff Reichard, who conducted a physical examination of the plaintiff in June, 2003, obtained no objective studies, and apparently did not review any medical records. (Tr. 391-5).

8

Scott

Dr. El-Naggar, by contrast, had seen the plaintiff for various conditions since at least January, 2002, when he saw her in follow-up for right carpal tunnel surgery performed by a colleague. (Tr. 197). Other procedures which he supervised or performed included a diagnostic discogram (i.e., a myelogram) and CT scan of the lumbar spine in June, 2002, which were interpreted as showing severe right lateral recess narrowing at the L4-L5 level (Tr. 244-8), a L4-L5 laminectomy and fusion with placement of cages, screws, and interconnecting bars in February, 2003 (Tr. 413-18), and an additional operation for the removal of some of the screws from this operation in September, 2003 (Tr. 465-9).

In November, 2003, Dr. El-Naggar completed a functional capacity form stating that the plaintiff was status-post an L4-5 fusion and that her symptoms were back pain, bilateral knee pain, and bilateral ankle pain. (Tr. 489). He identified objective signs or problems as being reduced range of motion/pain with motion, swelling, and joint warmth. (Id.). In terms of physical restrictions, he felt that the plaintiff could frequently lift up to 10 pounds, could sit for two hours in an eight-hour day, stand for one hour in an eight-hour day, and walk for one hour in an eight-hour day, and would have to change positions at will. (Tr. 490). She could never crawl, climb, or crouch, could occasionally bend, squat, stoop, kneel and "reach above," and needed to avoid moving machinery and automotive equipment. (Tr. 490-1). Dr. El-Naggar also estimated that pain would frequently interfere with her attention and

9

concentration, and that she would miss more than six days of work a month due to her problems. (Tr. 489, 491).

As a general rule, the opinion of a treating source is entitled to substantial deference, because he has had "a greater opportunity to observe and examine the patient [and] as a result of his duty to cure the patient [is] generally more familiar with the patient's condition than are other physicians." Walker v. Secretary of Health and Human Services, 980 F.2d 1066, 1070 (6th Cir. 1992).

As the plaintiff points out on appeal, the ALJ dealt with Dr. El-Naggar's opinion by saying that it was "largely consistent" with Dr. Reichard's, and that "to the extent it is inconsistent with Dr. Reichard's opinion, I reject it." (Tr. 24).

However, Dr. Reichard had given restrictions that were much less limiting than Dr. El-Naggar's, including the ability to sit, stand, and walk up to four hours each in an eight-hour day and occasionally lift up 20 pounds. (Tr. 396). It would be more correct to state that Dr. El-Naggar's findings were "largely inconsistent" with Dr. Reichard's in the most vital categories of lifting and sitting/standing/walking, particularly since they would preclude full-time work. As the Sixth Circuit has noted, an ALJ is obligated by 20 C.F.R. Section 404.1527(d)(2) to give good reasons for declining to accept the opinion of a treating physician. Wilson v. Commissioner of Social Security, 378 F.3d 541, 545 (6th Cir. 2004). This procedural requirement is hardly met by a misleading statement that a treating physician's opinion was "largely

10

consistent" with another source, combined with a bald statement that inconsistent portions would be rejected.[1]

Dr. Reichard had reported that the plaintiff was able to do most of her activities of daily living including housework and shopping, although she avoided heavy lifting. (Tr. 391). However, this account is at odds with her statements to other sources, including testimony at the administrative hearing that her daughter did most of the shopping and housework and she was unable to do much more than chest level dusting and putting a load of laundry in the washing machine, although she could not do the tugging to get the laundry back out, that she spent most of her day watching TV or reading, and that she did no yardwork. (Tr. 543-4, 547-8). She also told another consultative examiner, Dr. Howard Podolsky, prior to her back surgery that she could cook but avoided "rigorous cleaning." (Tr. 174). Her limited activities are also confirmed in a questionnaire completed by a neighbor in 2001. (Tr. 82-5). The ALJ cited the plaintiff's own accounts of what she was able to do as a reason for not accepting Dr. Patton's opinion, but apart from Dr. Reichard's statements, her accounts appear to be substantially consistent with each other, with the third party statement, and with the restrictions given by the treating physicians.

---

[1] It is also significant that another treating source, Dr. Patton, had listed restrictions very similar to Dr. El-Naggar's in terms of lifting, standing, walking, and sitting. (Tr. 386-7). He also noted that two of the medications which the plaintiff was taking, Tylox and alprazolam, might affect her ability to work. He indicated that the limitations had been present since July, 1999. (Tr. 387).

11

Scott

A remand will be required on the <u>Wilson</u> issue alone. The Court will note that,
moreover, giving any significant weight to Dr. Reichard is questionable in view of the
limited nature of his examination, with no objective studies ordered, and the lack of
records available for his review, although the plaintiff had extensive workups for
various problems which could have been furnished in order to give Dr. Reichard a
more complete picture of the plaintiff's situation. At the very least, under the
circumstances of this case, the ALJ should obtain the opinion of a Medical Expert,
or a better informed consultative examiner, with access to the entire record if the
opinions of the treating sources are to be rejected.

The decision will be remanded for further consideration.

This the ___20___ day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE

12